UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ONCE DOE and DOCE DOE,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 26-2507** |
| **ISLAMIC REPUBLIC OF IRAN,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Once Doe was born in Iran but moved to the United States in 2020 and, as of 2025, is a naturalized citizen. See ECF No. 1 (Compl.), ¶¶ 7–8. She is a professional journalist who got her start working for a reformist newspaper in Iran. Id., ¶ 7. Following the 2009 Green Movement, Plaintiff's journalism and public expression drew the (unfavorable) attention of Iranian authorities, who subjected her to surveillance and interrogation. Id., ¶ 26. Although Plaintiff subsequently left the country, the attention appears to have followed her and her minor daughter, Plaintiff Doce Doe, to the present day.

Iran has allegedly threatened Once Doe and her family, id., ¶¶ 29–30, 32–34, 43; directed physical attacks against her, id., ¶¶ 30–31, 39, one of which resulted in a broken nose requiring corrective surgery, id., ¶ 40; and even detained and physically assaulted Plaintiff's brother. Id., ¶¶ 37–38. As part of its targeting of Once Doe, Iran allegedly followed, confronted, and photographed her daughter and named her in threats, id., ¶¶ 32–34, leading Plaintiff to withdraw Doce Doe from public school and enroll her in private school with enhanced security measures. Id., ¶ 33.

1

Plaintiffs Once Doe and Doce Doe — the latter suing by and through her mother and next friend — thus sued Iran for damages under the Foreign Sovereign Immunities Act.  Id., ¶¶ 5–6. They now move to proceed pseudonymously.  See ECF No. 2 (Mot.).  The Court will grant their Motion.

## I.      Legal Standard

Generally, a complaint must identify the plaintiffs.  See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1).  That requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings."  In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)).  A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name."  In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020).  As a result, the court must "'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure'" by applying a "flexible and fact driven" balancing test.  Id. (quoting In re Sealed Case, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

(1)  whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;

(2)  whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;

(3)  the ages of the persons whose privacy interests are sought to be protected;

(4)  whether the action is against a governmental or private party; and relatedly,

(5)  the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (cleaned up).

## II.     Analysis

Plaintiffs have shown that their interest in pseudonymity outweighs the public's interest in learning their identities.

Beginning with the first factor, Plaintiffs seek to preserve the confidentiality of sensitive details.  Relevant here, privacy can include "maintaining [Plaintiffs'] and their family members' safety."  Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023); see also R.A. v. Islamic Republic of Iran, No. 23-2606, ECF No. 4 (Mem. Op. & Order) at 3 (D.D.C. Sept. 12, 2023) ("In the Complaint, they describe the severe violence and threats that they have already faced at the hands of proxy militia organizations and that they could experience after filing this lawsuit if their identities were made public . . . .  In light of this prior violence, Plaintiffs seek to avoid much graver harms than mere annoyance and criticism.").

Once Doe alleges that she and her family, including Doce Doe, have been subject to years of threats and violent attacks, all perpetrated by Iranian proxies.  Individuals believed to be Iranian agents threatened Once Doe, see Compl., ¶¶ 29, 33, her family in Tehran and Maryland, id., ¶¶ 30, 32–33, and her eight-year-old daughter, Doce Doe, who was followed, confronted, and photographed to that end.  Id., ¶¶ 32–34.  Those purported agents did not stop at threats: Iran's proxies allegedly assaulted Once Doe three times — striking her and pulling her hair, id., ¶ 30, kicking her in the back, id., ¶ 31, and breaking her nose.  Id., ¶¶ 39–40.  They detained Once Doe's brother under harsh conditions in an undisclosed location in Iran, physically assaulting him, too.  Id., ¶¶ 37–38.  Once Doe wants to remain anonymous to protect herself and her family from further threats and violence, see Mot. at 7, which this factor favors.

The second factor — the risk of retaliatory harm — is closely related to the first and

3

likewise weighs toward pseudonymity. The above incidents were, Once Doe alleges, carried out in retaliation for her reporting and public profile. See Compl., ¶¶ 26, 28, 30, 33, 35–36, 38, 43. And her Complaint makes accusations that, if true, Defendants would surely prefer to keep quiet: that the Government of Iran directs agents to threaten and assault foreign journalists, their children, and its own citizens to intimidate the former into silence. It seems a safe assumption that attaching Plaintiffs' names to the suit would risk exposing them and their family to further danger, particularly as they now seek compensatory and economic damages. Id. at 19. The "risk of retaliatory . . . harm to" Plaintiffs — and "to innocent non-parties" — thus supports letting mother and daughter proceed pseudonymously. In re Sealed Case, 971 F.3d at 326 (quotation marks omitted).

The third factor tips toward pseudonymity because disclosure of either Plaintiff's name would implicate the privacy interests or safety of a minor — namely, Doce Doe. Despite the fact that Once Doe is an adult, revealing her identity would necessarily reveal the identity of her eight-year-old daughter. See, e.g., Doe v. Blinken, No. 23-2997, ECF No. 3 (Mem. Op. & Order) at 4 (D.D.C. Oct. 13, 2023) ("To the extent that revealing Plaintiff's identity would also reveal the identities of his four minor children, proceeding pseudonymously would be appropriate."); R.A., No. 23-2606, Mem. Op. & Order at 4 (factor favored motion "to some extent" where "Plaintiffs indicate that one of them is a minor, and revealing the other Plaintiffs' identities risks undermining the anonymity of that person"); J. v. District of Columbia, No. 23-1279, ECF No. 3 (Mem. Op. & Order) at 4 (D.D.C. May 9, 2023) (factor favored pseudonymity; "although Plaintiffs are adults, they share common privacy interests with their minor child due to their intractably linked relationship") (cleaned up). As such, proceeding pseudonymously is favored.

4

Factor four, the identity of the defendants, favors pseudonymity when a plaintiff sues a government for individualized relief.  Doe v. Rubio, 2025 WL 3522731, at *2 (D.D.C. Dec. 9, 2025).  The suit here fits the bill.  Mother and daughter are suing the Government of Iran, the Islamic Revolutionary Guard Corps, the Ministry of Intelligence and Security, see Compl., ¶¶ 10–13 — all governmental entities — as well as officials, employees, operatives, and agents or proxies of said governmental entities (Does 1–50).  Id., ¶¶ 14–15.  Furthermore, they seek compensatory and economic damages, id., ¶ 17, both of which are forms of individualized relief.

Finally, letting Plaintiffs proceed pseudonymously will not prejudice Defendants.  Plaintiffs will file their true identities under seal for *in camera* inspection and have acknowledged that, in the unlikely event Iran appears to defend this action, the Court retains authority to order disclosure.  See Mot. at 12.  Defendants thus do not face a risk of unfairness.  See J.K.A. v. United States, 2023 WL 12248425, at *3 (D.D.C. Aug. 10, 2023) (when plaintiff makes such offer, this factor supports pseudonymity).  They remain free to request any further information they deem necessary to the full defense of this case or to ask the Court to reconsider this decision.

The Court highlights that this is an initial decision to permit Plaintiffs to proceed pseudonymously.  If Defendants appear to defend this suit, the balance of factors might tip the other way.  See John Doe I, John Doe II, & John Doe III v. Sabeti, 2025 WL 4348642, at *1 (M.D. Fla. Aug. 12, 2025) (reconsidering initial grant to proceed pseudonymously in Torture Victim Protection Act case upon defendant appearance).  In any event, Plaintiffs have made an initial showing that their concerns extend beyond Defendants' learning their identities to the risk that third parties could obtain this information and act on Defendants' behalf to harm them.  The

Court will thus grant Plaintiffs' Motion, subject to reconsideration by the District Judge to whom this case is randomly assigned.

In sum, all factors weigh in favor of granting Plaintiffs' Motion to Proceed Pseudonymously. The Court will therefore do as much.

The Court accordingly ORDERS that:

1. Plaintiffs' [2] Motion for Leave to Proceed Under Pseudonym is GRANTED, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;

2. All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; and

3. Within fourteen days of this Order, Plaintiffs shall file:

    i. A pseudonymous version of their [2] Motion on the public docket; and

    ii. A sealed *ex parte* declaration containing their real names and residential addresses.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: August 8, 2026