**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DOE et al** :

**Plaintiff,** :

**v.** : **Civil Action No.** 1:26-cv-2507

**THE ISLAMIC REPUBLIC OF IRAN:**
**et at.**
**Defendants** :

:

---

**PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE BY ELECTRONIC MAIL UPON DEFENDANTS**

## INTRODUCTION

Plaintiffs respectfully move this Court for an order: (1) authorizing service upon Defendants the Islamic Republic of Iran ("Iran"), the Islamic Revolutionary Guard Corps ("IRGC"), and the Ministry of Intelligence and Security ("MOIS") by electronic mail; and (2) in the alternative, deeming service complete upon all Defendants pursuant to *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998), and *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002).

The statutory mechanisms for service upon a foreign state are presently closed. On March 11, 2026, the U.S. Department of State formally confirmed that the Swiss Embassy's Foreign Interests Section in Tehran is "temporarily closed until further notice" and that "service upon Iranian defendants under Sec. 1608(a)(4) is not possible at this time." Ex. H. On June 15, 2026, the Department confirmed that although the Foreign Interests Section has since physically reopened, "there are still no regular diplomatic shipments between Bern and Tehran, which

continues to inhibit the ability to transmit documents in either direction." Ex. A. The United States Postal Service continues to list Iran as subject to suspension of international mail service for "unavailability of transportation," and DHL and UPS have each suspended service to Iran. Exs. B–D. The statutory mechanism for diplomatic service has been shut down by the agency Congress tasked with administering it, and the mail channel on which § 1608(a)(3) depends does not function. Under these circumstances, service by electronic mail is the only practicable means of providing notice to Defendants.

Three judges of this District, including your Honor, have granted precisely this relief on precisely these facts, twice as to the IRGC. *See Hutan v. Islamic Republic of Iran*, No. 1:25-cv-00837-ACR, Minute Order (D.D.C. Apr. 16, 2026) (Reyes, J.) (Ex. E); *John Farshid Doe v. Islamic Revolutionary Guard Corps*, No. 1:26-cv-00334 (CJN), Order (D.D.C. June 9, 2026) (Nichols, J.) (Ex. F); *Mahvi v. Islamic Republic of Iran*, No. 1:25-cv-00059-TNM-MAU, Minute Order (D.D.C. June 18, 2026) (Upadhyaya, Mag. J) (Ex. G).

## I. BACKGROUND

### A. Procedural History

Plaintiffs filed this action on July 17, 2026, asserting claims against Iran, the IRGC, and MOIS under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, arising from a sustained transnational campaign of hostage taking, torture, assault, surveillance, harassment, and intimidation directed at Plaintiff Once Doe, a naturalized United States citizen and Persian-language journalist, in retaliation for her reporting on the Islamic Republic, and directed at her minor daughter, Plaintiff Doce Doe, a national of the United States, as a means of coercing her mother. Sixty-day summonses issued as to each Defendant. Plaintiffs' Motion for Leave to Proceed Under Pseudonym, filed contemporaneously with the Complaint, remains pending.

Service under 28 U.S.C. § 1608(a)(1) and (a)(2) is unavailable on its face. Plaintiffs are aware of no special arrangement for service between Plaintiffs and any Defendant, and Iran is not a party to any applicable international convention on the service of judicial documents. *See Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 51 (D.D.C. 2009) (finding that "Iran is not a party to any 'international convention on service of judicial documents'").

Plaintiffs do not ask the Court to excuse a failed attempt at service under § 1608(a)(3) or § 1608(a)(4). Plaintiffs ask the Court to find those methods presently unavailable, which is the condition the statute itself makes the trigger for proceeding further. Section 1608(a)(3) is available only where "service cannot be made under paragraphs (1) or (2)," and § 1608(a)(4) only where "service cannot be made within 30 days under paragraph (3)." The D.C. Circuit has read that structure to require that a plaintiff "attempt service by the first method (*or determine that it is unavailable*) before proceeding to the second method, and so on." *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) (quoting *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008)) (emphasis added). The parenthetical is the Circuit's. As set forth in Part I.C and in Part III below, each remaining method is unavailable as a matter of documented fact, and the Department of State has twice confirmed in writing that the channel on which § 1608(a)(4) depends does not function.

B. The State Department's Confirmations

The Department of State's March 11, 2026 correspondence states, in relevant part:

"While the Embassy of the Swiss Confederation is serving as protecting power for U.S. interests in Iran, the Foreign Interests Section is temporarily closed until further notice. Given the security situation in Iran, service upon Iranian defendants under Sec. 1608(a)(4) is not possible at this time."

Ex. H. The Department further confirmed that it was "unable to give you a precise timetable for when service may be accomplished." *Id.*

That closure is a direct consequence of the ongoing military conflict between the United States and Iran, which commenced on February 28, 2026, and which has resulted in the deaths of Iran's Supreme Leader, the commander of the IRGC, and numerous other senior Iranian officials.

The partial reopening of the mission has not restored the channel. On June 15, 2026, undersigned counsel requested an updated status determination, noting that the Swiss Federal Department of Foreign Affairs had announced a phased reopening of the Swiss Embassy in Tehran in late April 2026, with personnel returning to resume the mission's core functions including the protecting-power mandate exercised on behalf of the United States. Ex. A. The Department's Judicial Assistance Team responded the same day:

"Thanks for your email. We have been in touch with our colleagues in Bern, and while we understand the Foreign Interests Section of the Swiss Embassy in Tehran has reopened, at this time there are still no regular diplomatic shipments between Bern and Tehran, which continues to inhibit the ability to transmit documents in either direction."

Ex. A. Service under § 1608(a)(4) therefore remains impossible notwithstanding the reopening of the mission. The Department's position is not that the mission is shuttered; it is that the transmission channel on which the statute depends does not function.

C. The Impossibility of Traditional Service Methods

As a result of the current hostilities, every traditional method of service upon these Defendants is presently unavailable:

(a) **Foreign Mail via the Clerk of Court.** The United States Postal Service maintains Iran on its list of countries subject to suspension of international mail service for "unavailability of transportation." Ex. B. DHL advises that it does not ship to Iran, and UPS advises that no service is available to Iran. Exs. C–D. When this Court effected § 1608(a)(3) service on Iran in *Azadeh v. Government of the Islamic*

*Republic of Iran*, the Clerk of Court did so by DHL, and the Clerk's Certificate of Mailing included "a copy of the DHL waybills and tracking numbers for each package." No. 16-cv-1467, 2018 WL 4232913, at *14 (D.D.C. Sept. 5, 2018). No such waybill can issue today. Certified mail is not a viable option.

(b) **Diplomatic Channels.** As confirmed by the Department of State, the Swiss Embassy's Foreign Interests Section — the sole mechanism for diplomatic service — was closed until further notice as of March 11, 2026, and although it has since reopened, there remain no regular diplomatic shipments between Bern and Tehran in either direction. Exs. A, H. Diplomatic service is impossible.

(c) **Physical Delivery.** The United States is actively engaged in military operations against Iran. Physical delivery of process to Iranian government offices is impossible, and no process server may enter Iran.

Under these extraordinary circumstances, electronic mail represents the only practicable means of providing notice to Defendants.

## II. LEGAL STANDARD

The FSIA establishes a hierarchical framework for service upon a foreign state and its agencies and instrumentalities. 28 U.S.C. § 1608. Section 1608(a) governs service on a foreign state or political subdivision; § 1608(b) governs service on an agency or instrumentality. Where the prescribed methods have been exhausted or are unavailable, courts have authority to fashion alternative means of service consistent with due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (due process requires only that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action").

Section 1608(b)(3)(C) supplies that authority in terms. It "allows a party to effect service by delivering a copy of the summons and complaint, together with a translation of each into the

official language of the foreign state as directed by order of the court consistent with the law of the place where service is to be made, so long as the method of service is reasonably calculated to give actual notice." *Crescent Petroleum Co. Int'l Ltd. v. Nat'l Iranian Oil Co.*, No. 22-cv-1361 (JMC), 2024 WL 1885498, at *6 (D.D.C. Apr. 30, 2024) (cleaned up).

Where a foreign state has refused service and diplomatic channels are unavailable, courts in this District have consistently deemed service complete. *See Flatow*, 999 F. Supp. at 12 (deeming service complete where Iran refused to accept service through diplomatic channels); *Weinstein*, 184 F. Supp. 2d at 19–20 (same); *Brewer*, 664 F. Supp. 2d at 49–50 (same).

Courts have likewise recognized electronic mail as an appropriate method of alternative service where traditional methods are unavailable. *See, e.g.*, *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (approving email service where the defendant was "elusive" and traditional methods ineffective); *F.T.C. v. PCCare247 Inc.*, No. 12-cv-7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (authorizing email service on foreign defendants).

## III. ARGUMENT

### A. Unavailability Is the Statute's Own Trigger, and Every Remaining Method Is Unavailable

The Department of State's formal determination that § 1608(a)(4) service "is not possible at this time" is not argument or speculation. Ex. H. It is an official determination by the agency Congress designated to facilitate diplomatic service, and it is accompanied by the Department's statement that it can supply no "precise timetable for when service may be accomplished." *Id.* The foreign-mail channel is closed by the Postal Service's own published suspension and by the withdrawal of every major commercial carrier, as Part III.B sets out. Physical delivery is impossible in a country against which the United States is conducting military operations.

Plaintiffs acknowledge that when serving a foreign sovereign, "strict adherence to the terms of 1608(a) is required." *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015). Strict adherence to a provision that Congress conditioned on unavailability means

giving effect to that condition, not disregarding it. Section 1608(a)(3) operates only where "service cannot be made under paragraphs (1) or (2)"; § 1608(a)(4) only where "service cannot be made within 30 days under paragraph (3)." Congress wrote unavailability into the statute as the trigger for moving on, and the D.C. Circuit has said that a plaintiff may "determine that [a method] is unavailable" rather than attempt it. *Angellino*, 688 F.3d at 773. Where unavailability is total, the statute's own logic does not require performance of an act that cannot be performed.

This Court has applied that principle to these facts. In *Azadeh*, it held that although *Barot* requires strict adherence, § 1608(a) prescribes four methods "'in descending order of preference,' not obligation," and concluded that "[n]o conceivable purpose, or interest of Defendants, would be served by requiring her go through that *empty gesture* just so as to preserve the 'order of preference' of methods of service outlined in section 1608(a)." 2018 WL 4232913, at *15 (quoting *Barot*, 785 F.3d at 27) (emphasis added). Requiring Plaintiffs to tender process to a mail channel the Postal Service has suspended, and then to wait thirty days before asking the Department of State to use a channel it has twice said does not function, is the empty gesture *Azadeh* describes.

B. Section 1608(a)(3) Cannot Be Performed, and Could Not Be Completed If It Were

Section 1608(a)(3) directs service "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." Two independent facts make that provision inoperative as to these Defendants.

First, no carrier will accept the item. The Postal Service maintains Iran on its published list of countries subject to suspension of international mail service for "unavailability of transportation." Ex. B. DHL advises that it does not ship to Iran, and UPS advises that no service is available to Iran. Exs. C–D. The Clerk cannot dispatch what no carrier will carry.

That is not an abstract objection. When this Court effected § 1608(a)(3) service on Iran in *Azadeh*, the Clerk of Court did so by DHL, and the Clerk's Certificate of Mailing included "a copy of the DHL waybills and tracking numbers for each package." 2018 WL 4232913, at *14. The record therefore identifies the specific instrumentality through which this Court's own Clerk has executed § 1608(a)(3) service upon this very foreign state, and that instrumentality now refuses the destination. No such waybill can issue today.

Second, even if an item could be dispatched, § 1608(a)(3) service could never be completed. The paragraph requires "a signed receipt," and § 1608(c)(2) makes service under it effective only "as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed." Congress drew that line deliberately. Service through diplomatic channels under § 1608(a)(4) is complete upon "the date of transmittal indicated in the certified copy of the diplomatic note," § 1608(c)(1), and requires no signed receipt at all. *See New England Merchants*, 495 F. Supp. at 79 (comparing § 1608(c)(1) with § 1608(c)(2)). Where no carrier serves the destination, no receipt can be signed and returned, and a method whose completion the statute conditions on that receipt cannot be completed.

Plaintiffs do not suggest that a plaintiff may bypass § 1608(a)(3) whenever service appears inconvenient. The showing here is narrower and entirely documentary: the destination is suspended by the Postal Service, refused by both commercial carriers, and specifically refused by the carrier this Court's Clerk used to serve Iran in *Azadeh*. On that record, the tender *Angellino* contemplates could not produce service. It could produce only a returned package, and § 1608(a)(3) does not require the Clerk to generate one.

C. The Reopening of the Swiss Mission Does Not Restore the § 1608(a)(4) Channel, and the Department of State Has Said So

The Court may reasonably ask whether the phased reopening of the Swiss Embassy in Tehran, announced in late April 2026, has restored the § 1608(a)(4) channel. It has not, and Plaintiffs do not ask the Court to take their word for it. Undersigned counsel put that precise question to the Department of State, framed in terms of the reopening, and the Department answered.

Counsel's June 15, 2026 request recited the Department's prior March 11, 2026 determination, noted that "the Swiss Federal Department of Foreign Affairs announced that it had begun a phased reopening of the Swiss Embassy in Tehran, with personnel returning to resume the mission's core functions, including the protecting-power mandate exercised on behalf of the United States," and asked the Department "whether service of process upon the Islamic Republic of Iran pursuant to Section 1608(a)(4) is available at this time." Ex. A. The Judicial Assistance Team responded the same day:

"Thanks for your email. We have been in touch with our colleagues in Bern, and while we understand the Foreign Interests Section of the Swiss Embassy in Tehran has reopened, at this time there are still no regular diplomatic shipments between Bern and Tehran, which continues to inhibit the ability to transmit documents in either direction."

Ex. A. Three features of that exchange bear emphasis. First, it postdates the reopening; this is not stale evidence of a condition that has since changed. Second, the Department addressed the reopening on its own terms, expressly acknowledging that the Foreign Interests Section "has reopened" and answering the question anyway. Third, the Department's answer is not that shipments are delayed or reduced but that there are none, and that the resulting inability to transmit documents runs "in either direction."

Read together with the Department's March 11, 2026 determination that "[g]iven the security situation in Iran, service upon Iranian defendants under Sec. 1608(a)(4) is not possible at this time," Ex. H, the record establishes two things: the channel was closed, and reopening the mission did not open it. That distinction matters because the premise of § 1608(a)(4) is not the presence of a protecting power in Tehran. It is the ability to transmit documents to that protecting power and to have them delivered. The Department has confirmed that ability does not presently exist.

D. Three Judges of This District Have Granted This Relief on These Facts

Judges of this District have repeatedly authorized the relief Plaintiffs seek, on the same record and as to the same Defendants.

In *Hutan v. Islamic Republic of Iran*, Judge Ana C. Reyes granted a motion for alternative service against the Islamic Republic of Iran on April 16, 2026, finding good cause to authorize alternative service by electronic mail pursuant to 28 U.S.C. § 1608(b)(3)(C). Quoting *Crescent Petroleum*, the Court explained that the provision permits court-directed service so long as the method "is reasonably calculated to give actual notice," and granted leave to effect service by email "[g]iven the unavailability of service through foreign mail via the Clerk of Court, diplomatic channels, and physical delivery." No. 1:25-cv-00837-ACR, Minute Order (D.D.C. Apr. 16, 2026) (Ex. E). Those are the same three traditional methods that Plaintiffs have shown are unavailable here.

In *John Farshid Doe v. Islamic Revolutionary Guard Corps*, Judge Carl J. Nichols granted a materially identical motion on June 9, 2026. The defendants there were the IRGC — a Defendant in this action as well — and MOIS. The Court held that "[b]ecause the methods of service ordinarily prescribed by statute are unavailable due to the ongoing military conflict between the United States and Iran, the Court may authorize a method 'reasonably calculated to give actual notice' that is 'consistent with the law of the place where service is to be made.'" It

found that "service by electronic mail to the Permanent Mission of the Islamic Republic of Iran to the United Nations at iran@un.int satisfies that standard, as the Permanent Mission's role as Iran's diplomatic representation makes it well-suited to ensure that the proper parties receive actual notice." No. 1:26-cv-00334 (CJN), Order at 1 (D.D.C. June 9, 2026) (Ex. F). The Court authorized service by transmitting the summons, the complaint, and the required notices, together with a Farsi translation of each, to that address, and directed the filing of a certificate of service within seven days. *Id.* at 1–2.

*Mahvi v. Islamic Republic of Iran* is the closest of the three and supplies the fullest analysis. On June 18, 2026, this Court granted the motion, applying *Mullane* and finding that "Plaintiff's proposed method of service is reasonably calculated to apprise Defendants of this action and afford them the opportunity to respond," because Iran "maintains an official, diplomatic presence with the United Nations in New York and provides the aforementioned email on its Ministry of Foreign Affairs webpage," such that "[i]t is reasonable to assume that the email address Iran has provided would apprise Iran of the pendency of the action and afford it the opportunity to respond." No. 1:25-cv-00059-TNM-MAU, Minute Order (D.D.C. June 18, 2026) (Ex. G). The Court ordered service by electronic mail to iran@un.int with a Farsi translation of each document and a certificate of service within seven days, and observed that its order "is consistent with those of other courts in this District who recently addressed the same issue," citing *Farshid Doe* and *Hutan*. *Id.*

*Mahvi* also disposes of a question that might otherwise complicate this motion. The Court there reached the IRGC on the premise that it is "so closely bound up with the structure of the state that [it] must in all cases be considered as the 'foreign state' itself," *id.* (quoting *Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 313 (D.D.C. 2022)), and authorized email service as to Iran and the IRGC together on that footing. The Court accordingly need not resolve whether the IRGC is the foreign state itself or an agency or instrumentality of it. On either

classification, and whether the analysis proceeds under § 1608(a) or § 1608(b)(3)(C), the prescribed methods are unavailable and this Court has already authorized the same substitute.

Service was in fact effected in *Mahvi* by electronic mail on June 18, 2026, and the Clerk entered default against Defendants on August 20, 2026. The method Plaintiffs propose is therefore not merely authorized in this District; it has been carried through to a completed proof of service and an entry of default in a matter before this Court.

E. Service by Electronic Mail Is Appropriate

Given the impossibility of traditional service methods, Plaintiffs request authorization to serve all Defendants by electronic mail to (1) the Permanent Mission of the Islamic Republic of Iran to the United Nations at iran@un.int, and (2) the Ministry of Foreign Affairs of the Islamic Republic of Iran at info@mfa.gov.ir, together with a Farsi translation of each document.

Service at these addresses is appropriate for all three Defendants. The Permanent Mission is the official diplomatic representation of the Islamic Republic of Iran in the United States. The IRGC and MOIS are components of the Iranian state, and service upon Iran's official mission provides notice to all Iranian government entities. Once received, Iranian officials can disseminate the summons and Complaint to the appropriate ministries and agencies. This is consistent with the structure of 28 U.S.C. § 1608(a)(3), which directs service to "the head of the ministry of foreign affairs" — a central address from which notice flows to the relevant components of the foreign state. It is also the address this Court identified in *Mahvi* as one Iran "has provided" on its own Ministry of Foreign Affairs webpage. Ex. G.

Electronic mail service to these addresses is reasonably calculated to provide actual notice under the circumstances. Iran maintains an active diplomatic presence at the United Nations and continues to communicate electronically with the international community. The Mission remains operational and staffed notwithstanding the current hostilities. Email to these addresses will reach officials with authority to receive communications on behalf of the Iranian government and its

agencies. Section 1608(b)(3)(C) requires only that the court-directed method not be "prohibited under the law of the foreign state," *New England Merchants National Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 79 n.4 (S.D.N.Y. 1980), and Plaintiffs are aware of no Iranian law prohibiting the receipt of electronic mail at Iran's own Permanent Mission in New York, where service is in any event effected in the United States rather than in Iran.

F. Requiring Exhaustion Would Work the Prejudice *Azadeh* Found Decisive

*Azadeh* drew from *Barot* four considerations governing whether to excuse strict compliance: "the district court's statutory responsibilities and prominent role in the mistakes of service in [plaintiff's] case, the prejudice to [plaintiff], the lack of prejudice to the [defendant] Embassy, and [plaintiff's] good-faith efforts at service." 2018 WL 4232913, at *15 (quoting *Barot*, 785 F.3d at 29). Each consideration that bears on this case favors Plaintiffs.

Defendants suffer no prejudice. They have not appeared, and under the relief sought they will receive the summons and Complaint in Farsi at Iran's own diplomatic mission — the same notice § 1608 exists to provide. Plaintiffs' efforts are in good faith; the *Dehnoushi* court so found on materially identical facts, holding that a "failure to [effect service] in accordance with Section 1608(a) is not attributable to any lack of diligence on their part." 2026 WL 1786419, at *2.

The prejudice to Plaintiffs is the kind *Azadeh* found decisive. There, requiring the plaintiff to re-serve would likely have caused her to miss the claim deadline for the United States Victims of State Sponsored Terrorism Fund, "thereby denying her the most realistic path for recovery on any judgment." 2018 WL 4232913, at *15. Plaintiffs intend to seek recovery from the same Fund. Every month spent tendering process to a suspended mail channel, waiting thirty days for that tender to fail, and then adding this matter to the queue of requests the Department of State has been unable to complete — in a related case, for more than a year — is a month of delay imposed on Plaintiffs for no corresponding benefit to Defendants and no purpose the statute serves.

G. Defendants Are on Notice

Due process is satisfied. Iran has published the very address Plaintiffs propose as its own channel of communication, and the Permanent Mission's function is to receive communications directed to the Iranian state. The IRGC and MOIS, as components of Iran, are likewise reached. The extensive international coverage of litigation against Iran under the FSIA terrorism exception provides additional assurance that Defendants are aware of pending claims. To the extent Defendants elect not to participate, they should not be rewarded for that choice by indefinite delay of these proceedings.

**IV. CONCLUSION**

The Department of State has twice confirmed that the statutory mechanism for diplomatic service does not function and that no timetable exists for its restoration — once before the Swiss mission reopened, and again after. The foreign-mail channel is suspended and every commercial carrier has withdrawn from Iran. Physical delivery is impossible. Section 1608(a) conditions each of its methods on the unavailability of the one before it, and the D.C. Circuit permits a plaintiff to determine that a method is unavailable rather than perform it. Three judges of this District, including this Court in *Mahvi*, have authorized service by electronic mail to iran@un.int on this record, and in *Mahvi* that service was effected and the Clerk entered default. Under these circumstances, Plaintiffs respectfully request that this Court:

(1) Authorize Plaintiffs to serve Defendants the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Ministry of Intelligence and Security by transmitting the summons, the Complaint, the Notice of Suit, and all required attachments, together with a Farsi translation of each, by electronic mail to the Permanent Mission of the Islamic Republic of Iran to the United Nations at iran@un.int and to the Ministry of Foreign Affairs of the Islamic Republic of Iran at info@mfa.gov.ir;

(2) In the alternative, deem service complete upon all Defendants pursuant to *Flatow* and *Weinstein*;

(3) Direct Plaintiffs to file a certificate of service, together with proof of transmission, within seven (7) days of effecting service; and

(4) Grant such other and further relief as the Court deems just and proper.

Pursuant to LCvR 7(c), a proposed order is submitted herewith. Conferral under LCvR 7(m) is impracticable because no Defendant has been served and no counsel has appeared.

Dated: August 27, 2026

Respectfully submitted,

/s/Jeffrey D. Katz
Jeffrey D. Katz Bar# 17071
JDKatz, P.C.
4800 Montgomery Avenue, Suite 600
Bethesda, MD 20814
Phone: (240) 743-5408
Email: Jeffrey@JDKatz.com
*Attorney for Plaintiffs*